TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MARIA ELENA STITELER (Cal. Bar No. 296086)
Assistant United States Attorney
ANGELA C. MAKABALI (Cal. Bar No. 296824)
Special Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6148/2331
     Facsimile: (213) 894-0141
     E-mail:   maria.stiteler@usdoj.gov
              angela.makabali@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>            v.<br><br>DEMETRIUS JOHNSON,<br><br>        Defendant. | No. CR 19-00597-ODW<br><br><u>GOVERNMENT'S TRIAL MEMORANDUM</u><br><br>DATE:  December 22, 2021<br>TIME:  8:30 a.m.<br>PLACE: The Courtroom of the Hon.<br>       Otis D. Wright, II |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorney Maria Elena Stiteler, and Special Assistant United States Attorney Angela C. Makabali, hereby files its Trial Memorandum for the above-captioned case.  The

//

//

//

//

government respectfully requests leave to file additional memoranda as may become appropriate during the course of trial.

Dated: December 19, 2021          Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

              */s/ Maria Elena Stiteler*
MARIA ELENA STITELER
Assistant United States Attorney
ANGELA C. MAKABALI
Special Assistant United States
Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE(S)

TABLE OF AUTHORITIES......................................................i

TRIAL MEMORANDUM.........................................................1

I.   STATUS OF THE CASE.................................................1

     A.   Indictment....................................................1

     B.   Discovery.....................................................1

II.  TRIAL..............................................................1

     A.   Government's Witness List.....................................1

     B.   Pretrial Motions..............................................2

III. STATEMENT OF FACTS.................................................2

IV.  THE CHARGED OFFENSE................................................3

     A.   Governing Statutes............................................3

     B.   Elements of 18 U.S.C. § 115(a)(1)(B)..........................4

          1.   A "Threat"...............................................4

          2.   "Federal Official".......................................6

          3.   Intent to Impede, Retaliate, and/or Interfere............8

V.   LEGAL AND EVIDENTIARY ISSUES.......................................8

     A.   Hearsay.......................................................8

          1.   Defendant's Statements Are Not Hearsay When
               Introduced by the Government.............................8

          2.   Defendant's Statements Are Hearsay When Offered
               by the Defendant.........................................9

          3.   Statements to Defendant.................................11

     B.   Defendant's False Exculpatory Statements.....................11

     C.   Certified Business Records...................................12

     D.   Identification of Defendant..................................12

     E.   Photographic Evidence........................................13

     F.   Maps and Diagrams............................................13

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                           PAGE

    G.   Video and Audio Recordings and Transcript................14

    H.   Defendant Should Be Precluded from Affirmatively
        Entering Any Evidence Not Produced in Discovery.........15

    I.   Scope of Cross-Examination of Defendant.................16

    J.   Character Evidence......................................16

    K.   Affirmative Defenses....................................17

    L.   Identification of Defense Witnesses.....................18

    M.   Jury Nullification......................................18

VI.   CONCLUSION..................................................19

**TABLE OF AUTHORITIES**

CASES                                                                    PAGE

Beech Aircraft Corp. v. Rainey,
     488 U.S. 153 (1988)  ........................................... 10

DeVore v. United States,
     368 F.2d 396 (9th Cir. 1966)  ................................ 11

Michelson v. United States,
     335 U.S. 469 (1948)  ..................................... 16, 17

Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition
of Life Activists,
     290 F.3d 1058 (9th Cir. 2002) (en banc)  .................... 5, 6

Roaers v. United States,
     422 U.S. 35 (1975)  .......................................... 19

Stovall v. Denno,
     355 F.2d 731 (2d Cir. 1966)  ................................ 12

Taylor v. Illinois,
     484 U.S. 400 (1988)  ...................................... 15-16

Tennessee v. Street,
     471 U.S. 409 (1985)  ......................................... 9

Thomas v. United States,
     343 F.2d 49 (9th Cir. 1965)  ................................ 12

United States v. Bagdasarian,
     652 F.3d 1113 (9th Cir. 2011)  .......................... 4-5, 6

United States v. Bankoff,
     613 F.3d 358 (3d Cir. 2010)  ................................. 7

United States v. Berki,
     936 F.2d 529 (11th Cir. 1991)  ............................. 7-8

United States v. Black,
     767 F.2d 1334 (9th Cir. 1985)  .............................. 16

United States v. Blackwood,
     878 F.2d 1200 (9th Cir. 1989)  .............................. 14

United States v. Collicott,
     92 F.3d 973 (9th Cir. 1996)  ................................ 10

United States v. Cueto,
     611 F.2d 1056 (5th Cir. 1980)  .............................. 13

i

United States v. Elonis,
  135 S. Ct. 2001 (2015) ........................................ 5

United States v. Fernandez,
  839 F.2d 639 (9th Cir. 1988) ................................. 9

United States v. Jones,
  933 F.2d 807 (10th Cir. 1991) ................................ 19

United States v. Juvenile Female,
  566 F.3d 943 (9th Cir. 2009) ................................. 8

United States v. King,
  587 F.2d 956 (9th Cir. 1978) ................................. 14

United States v. Krug,
  CR No. 09-1148-GHK, 2013 WL 12205704 (C.D. Cal. Aug. 8, 2013) .. 6

United States v. Lopez-Figueroa,
  316 F. App'x 548 (9th Cir. 2008) ........................... 9, 11

United States v. Malatesta,
  583 F.2d 748 (5th Cir. 1978) ................................. 13

United States v. May,
  622 F.2d 1000 (9th Cir. 1980) ................................ 13

United States v. McCollom,
  664 F.2d 56 (5th Cir. 1981) .................................. 17

United States v. Meraz,
  663 F. App'x 580 (9th Cir. 2016) ............................ 10

United States v. Miranda-Uriarte,
  649 F.2d 1345 (9th Cir. 1981) ............................... 16

United States v. Mobley,
  803 F.3d 1105 (9th Cir. 2015) ................................ 8

United States v. Ornelas,
  906 F.3d 1138 (9th Cir. 2018) ................................ 8

United States v. Orozco-Santillan,
  903 F.2d 1262 (9th Cir. 1990) ................................ 6

United States v. Ortega,
  203 F.3d 675 (9th Cir. 2000) ............................... 9, 10

United States v. Pena-Gutierrez,
  222 F.3d 1080 (9th Cir. 2000) ............................... 14

United States v. Perkins,
  937 F.2d 1397 (9th Cir. 1991) ............................... 11

ii

United States v. Powell,
    955 F.2d 1206 (9th Cir. 1992) ................................ 19

United States v. Shyrock,
    342 F.3d 948 (9th Cir. 1977) ................................ 13

United States v. Smith,
    591 F.3d 974 (8th Cir. 2010) ................................ 14

United States v. Spruill,
    118 F.3d 221 (4th Cir. 1997) ................................. 5

United States v. Stearns,
    550 F.2d 1167 (9th Cir. 1977) ............................... 13

United States v. Stewart,
    420 F.3d 1007 (9th Cir. 2005) ................................ 6

United States v. Turner,
    528 F.2d 143 (9th Cir. 1975) ................................ 15

United States v. Valerio,
    441 F.3d 837 (9th Cir. 2006) ................................ 11

United States v. Vallejos,
    742 F.3d 902 (9th Cir. 2014) ................................ 10

United States v. Wynn,
    827 F.3d 778 (8th Cir. 2016) ................................. 7

Virginia v. Black,
    538 U.S. 343 (2003) .......................................... 6

Zal v. Steppe,
    968 F.2d 924 (9th Cir. 1992) ................................ 19

STATUTES                                                         PAGE

6 U.S.C. § 101 ................................................... 7

6 U.S.C. § 542 ................................................... 7

18 U.S.C. § 111 .................................................. 8

18 U.S.C. § 115 .............................................. supra

18 U.S.C. § 1114 .......................................... 3, 4, 7

42 U.S.C. § 901 .................................................. 7

Fed. R. Crim. P. 12.1, 12.2 .................................... 17

Fed. R. Crim. P. 16 ............................................ 15

Fed. R. Evid. 106 .......................................... 10, 11

Fed. R. Evid. 401.......................................... 18, 19

Fed. R. Evid. 403 .......................................... 18, 19

Fed. R. Evid. 404 ............................................. 2

Fed. R. Evid. 405 .......................................... 16, 17

Fed. R. Evid. 611 ...................................... 13, 14, 16

Fed. R. Evid. 801 ................................... 9, 11, 12, 13

Fed. R. Evid. 901 ............................................ 14

Fed. R. Evid. 902 ............................................ 12

1

**TRIAL MEMORANDUM**

2 **I.   STATUS OF THE CASE**

3     **A.   Indictment**

4     The single-count Indictment charges defendant Demetrius Johnson

5 ("defendant") with Threatening a Person Assisting Federal Officers

6 and Employees, namely, Protective Security Officer ("PSO") C.C., in

7 violation of Title 18, United States Code, Section 115(a)(1)(B).

8 (Dkt. 1.)

9     **B.   Discovery**

10     The government has produced approximately 737 pages of discovery

11 to defense counsel, including among other documents, investigation

12 reports, photographs, DMV and criminal history records, and a victim

13 statement.  The discovery also includes surveillance video and audio

14 and video recordings of a _Mirandized_ interview with defendant.

15     Despite multiple requests from the government, defense counsel

16 has not produced any reciprocal discovery beyond a letter relating to

17 defendant's most recent _ex parte_ application for reconsideration of

18 detention.  As set forth below in Section V.H, the Court should

19 exclude defendant from entering into evidence during trial any

20 materials not produced to the government in discovery.

21 **II.   TRIAL**

22     Jury trial is currently scheduled for December 22, 2021, at

23 8:30 a.m., before the Honorable Otis D. Wright, II, United States

24 District Judge.

25     **A.   Government's Witness List**

26     The government estimates that its case-in-chief will last

27 approximately one to two days.  The government intends to call the

28

following witnesses, but respectfully requests the opportunity to
modify its witness list and time estimates as necessary:

| Witness | Direct Estimate | Cross Estimate |
|---------|-----------------|----------------|
| Protective Security Officer C.C., Paragon Systems, under contract with Federal Protective Service ("FPS") | 1.5 hours | 45 minutes |
| Gregory "Mike" Navarro | 30 minutes | 25 minutes |
| Special Agent Thomas J. Vasquez, FPS | 1 hour | 50 minutes |
| Special Agent Paul Yokoyama, Social Security Administration Office of Inspector General ("SSA OIG") | 20 minutes | 15 minutes |

B.    **Pretrial Motions**

On December 15, 2021 the government filed motions in limine to
1) permit the government to admit certain evidence under Federal
Rules of Evidence 404(b) and 609, and 2) permit the government to
elicit testimony from C.C. that, in connection with defendant's
threat against C.C., defendant yelled out a reference to the "Piru"
criminal street gang, thereby implying membership or affiliation with
the gang.  (Dkt. Nos. 97, 98).

III. **STATEMENT OF FACTS**

The government expects that the evidence at trial will
establish the following facts, among others:

On August 6, 2019, defendant and an associate, "Carson," went to
the Social Security Administration Office in Huntington Park,
California, where defendant had an appointment.  When PSO C.C.
informed defendant that the office was closed, defendant became irate
and aggressive toward PSO C.C., yelled out a reference to the "Piru"
criminal street gang, and threatened that he would "get a gun and

2

shoot" the PSO.  Surveillance video shows defendant's aggressive conduct toward the PSO, and the PSO and a civilian third-party witness heard and reported defendant's threatening statements.  Both the PSO and the third-party witness identified the person on the surveillance video who made the threats as wearing a white shirt.

In a <u>Mirandized</u> interview in early September 2019, defendant confirmed that he was present at the SSA Office on August 6, 2019, identified himself as having worn a white shirt to the SSA office that day, and identified the tan or beige car that he drove to leave the SSA office.  Defendant also admitted that while waiting outside the SSA office that day, he made a statement regarding going to a car to get a gun and shooting and killing someone, though he self-servingly denied threatening PSO C.C., and said he was instead joking with his friend Carson, stating: "I said, 'Carson, what you going to do, go to your car, get your gun and shoot me and kill me?'" Defendant also denied claiming gang affiliation to PSO C.C.

## IV.  THE CHARGED OFFENSE

### A.  Governing Statutes

Title 18, United States Code, Section 115(a)(1)(B) provides, in pertinent part, "Whoever . . . threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or [an official whose killing would be a crime under section 1114 of this title] . . . with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge or law enforcement officer on account of the performance of official duties [shall be guilty of a crime]."  18 U.S.C. § 115(a)(1)(B).

1    Title 18, United States Code, Section 1114 makes it a crime to

2 kill "any officer or employee of the United States or of any agency

3 in any branch of the United States Government (including any member

4 of the uniformed services) while such officer or employee is engaged

5 in or on account of the performance of official duties, or <u>any person</u>

6 <u>assisting such an officer or employee in the performance of such</u>

7 <u>duties or on account of that assistance</u>."  18 U.S.C. § 1114 (emphasis

8 added).

9    **B.    Elements of 18 U.S.C. § 115(a)(1)(B)**

10    For defendant to be found guilty of Threatening a Person

11 Assisting Federal Officers and Employees, in violation of 18 U.S.C.

12 § 115(a)(1)(B), the government must prove each of the following

13 elements beyond a reasonable doubt:

14    First, defendant threatened to assault or murder PSO C.C.

15    Second, PSO C.C. was a federal official within the meaning of

16 Section 115(a)(1)(B) at the time the threat was made.

17    Third, defendant made the threat with the intent to impede,

18 intimidate, and/or interfere with PSO C.C. while PSO C.C. was engaged

19 in the performance of his official duties, or with the intent to

20 retaliate against PSO C.C. on account of the performance of his

21 official duties.

22    1.    A "Threat"

23    The test for whether a statement is a threat has both objective

24 and subjective elements.  Objectively, for a statement to be a

25 threat, the statement must have been made under such circumstances

26 that a reasonable person who heard or read the statement would

27 understand it as a serious expression of an intent to inflict bodily

28 injury.  <u>United States v. Bagdasarian</u>, 652 F.3d 1113, 1118-19 (9th

Cir. 2011) ("The [objective element] is that the statement would be understood by people hearing or reading it in context as a serious expression of an intent to kill or injure. . . ."). Subjectively, in addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat. United States v. Elonis, 135 S. Ct. 2001, 2012 (2015) ("There is no dispute that the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat.").

A "threat" is a serious statement expressing an intention to inflict bodily injury or murder at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said jokingly. Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 290 F.3d 1058, 1077 (9th Cir. 2002) (en banc). "[A] true threat is [ ] a statement which, in the entire context and under all the circumstances, a reasonable person would foresee would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." Id.; Bagdasarian, 652 F.3d at 1119-22; United States v. Spruill, 118 F.3d 221, 228 (4th Cir. 1997) (defining a true threat as "a serious threat as distinguished from words as mere political argument, idle talk or jest" and holding that "[c]ontext is important" in making the assessment).

The totality of the circumstances is relevant. Specifically, to determine whether a statement was a threat "requires the fact-finder to look at the entire factual context of the statements including: the surrounding events, the listeners' reaction, and whether the

1  words were conditional." Bagdasarian, 652 F.3d at 1118-19 (citation,

2  internal quotations and alterations omitted); United States v.

3  Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir. 1990) ("Alleged

4  threats should be considered in light of their entire factual

5  context, including the surrounding events and reaction of the

6  listeners."), overruled on other grounds by Planned Parenthood, 290

7  F.3d at 1073 (overruling standard of review).

8      The government is not required to prove that the defendant

9  intended to carry out the threat or that he had the present ability

10 to carry out the threat. Virginia v. Black, 538 U.S. 343, 360 (2003)

11 ("The speaker need not actually intend to carry out the threat.");

12 United States v. Stewart, 420 F.3d 1007, 1019 n.9 (9th Cir. 2005)

13 ("It is well-settled that a speaker can subjectively intend the

14 speech as a threat even if the speaker never actually intended to

15 carry out the threat."); see also Orozco-Santillan, 903 F.2d at 1265

16 n.3 ("The only intent requirement is that the defendant intentionally

17 and knowingly communicates his threat, not that he intended or was

18 able to carry out his threat.").

19     Nor is it necessary that the government prove the exact words of

20 the threat. See United States v. Krug, CR No. 09-1148-GHK, 2013 WL

21 12205704, at *7 n.6 (C.D. Cal. Aug. 8, 2013) ("[T]he exact wording of

22 a threat need not be established to support a threat conviction, so

23 long as the jury concludes that the totality of the circumstances

24 indicated that a threat was made.") (collecting cases).

25         2.   "Federal Official"

26     Section 115(a)(1)(B) makes it a crime to threaten to assault or

27 murder a "person assisting officers or employees of the United

28 States." See 18 U.S.C. § 115(a)(1)(B) (incorporating by reference

1    persons protected under 18 U.S.C. § 1114).  Specifically,

2    § 115(a)(1)(B) makes it a crime to threaten "a United States

3    official, a United States judge, a Federal law enforcement officer,"

4    or "an official whose killing would be a crime under [18 U.S.C.

5    § 1114]."  See 18 U.S.C. 115(a)(1)((A), (a)(1)(B).  Section 1114, in

6    turn, makes it a crime to kill, "any officer or employee of the

7    United States or of any agency in any branch of the United States

8    Government . . . or any person assisting such an officer or employee

9    in the performance of such duties or on account of that assistance."

10   18 U.S.C. § 1114 (emphasis added); see also United States v. Bankoff,

11   613 F.3d 358, 370 (3d Cir. 2010) (Section 115 "incorporates by

12   reference all the individuals protected under § 1114."); accord

13   United States v. Wynn, 827 F.3d 778, 784-85 (8th Cir. 2016).  The

14   definition of "official" was argued before the Ninth Circuit on

15   December 8, 2021, in United States v. Anderson, Case No. 20-50207

16   (Ninth Cir.).

17         As relevant here, officers and employees of the Social Security

18   Administration ("SSA") and the Federal Protective Service ("FPS"),

19   which is part of the Department of Homeland Security, are officers

20   and employees of the United States.  See 42 U.S.C. § 901

21   (establishing the Social Security Administration); 6 U.S.C. § 101

22   (establishing the Department of Homeland Security); 6 U.S.C. § 542

23   (providing for transfer of Federal Protective Service to the

24   Department of Homeland Security).

25         The government does not have to prove that the defendant knew

26   when he made the threat that the victim, PSO C.C., was a federal

27   official.  See United States v. Berki, 936 F.2d 529, 531-32 & n.2

28   (11th Cir. 1991) (approving instruction: "[i]t is not necessary to

show that the defendant knew the person being threatened was at that time a United States district judge."); see also United States v. Mobley, 803 F.3d 1105, 1109 (9th Cir. 2015) (lack of knowledge as to victim's status as federal officer is "irrelevant to establishing the wrongfulness of the defendant's conduct" in prosecution for assault of federal officer under 18 U.S.C. § 111).

### 3.   Intent to Impede, Retaliate, and/or Interfere

The government must prove that defendant made the threat with the intent to impede, intimidate, and/or interfere with PSO C.C. while he was engaged in the performance of his official duties, or with the intent to retaliate against PSO C.C. on account of the performance of PSO C.C.'s official duties.  18 U.S.C. § 115(a)(1)(B).

A person is engaging in the performance of official duties if he is acting within the scope of what he is employed to do, in contrast to engaging in a personal frolic of his own.  United States v. Ornelas, 906 F.3d 1138, 1149 (9th Cir. 2018) (approving instruction: "the test" for determining whether an officer is "[e]ngaged in the performance of official duties" is "whether the officer is acting within the scope of his employment, that is, whether the officer's actions fall within his agency's overall mission, in contrast to engaging in a personal frolic of his own"); accord United States v. Juvenile Female, 566 F.3d 943, 950 (9th Cir. 2009).

## V.   LEGAL AND EVIDENTIARY ISSUES

### A.   Hearsay

#### 1.   Defendant's Statements Are Not Hearsay When Introduced by the Government

The government intends to introduce defendant's statements to PSO C.C. at the Huntington Park SSA Office on August 6, 2019,

1    including his telling C.C. that he had an appointment, that "you

2    motherfuckers are going to see me," and his ultimate threat that he

3    was going to go to his car to get his gun to shoot PSO C.C and was a

4    member of the Piru criminal street gang.  The government also intends

5    to introduce certain excerpts of defendant's recorded, Mirandized

6    interview with Special Agent Thomas Vasquez on September 4, 2019.  If

7    introduced by the government, these statements are not hearsay, but

8    rather party admissions that are admissible under Federal Rule of

9    Evidence 801(d)(2)(A).  The admission of non-hearsay statements

10   generally does not violate the Confrontation Clause.  See Tennessee

11   v. Street, 471 U.S. 409, 414 (1985).  Accordingly, the government may

12   properly introduce defendant's statements and admissions in its case-

13   in-chief.

14             2.   Defendant's Statements Are Hearsay When Offered by the
                    Defendant
15

16        Defendant may not introduce his own prior statements, either on

17   direct examination of his own witnesses, or cross-examination of the

18   government's witnesses, because those statements are inadmissible

19   hearsay when offered by defendant.  See Fed. R. Evid. 801(d)(1);

20   United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (non-self-

21   inculpatory statements, even if made contemporaneously with other

22   self-inculpatory statements, are inadmissible hearsay); United States

23   v. Lopez-Figueroa, 316 F. App'x 548, 550 (9th Cir. 2008) (defendant

24   could not introduce own statements redacted from confession by

25   government).  To permit defendant to place his statements before the

26   jury without subjecting them to cross-examination would be to allow

27   "precisely what the hearsay rule forbids."  United States v.

28   Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

1    Defendant may not invoke the rule of completeness to admit

2    additional excerpts of his recorded conversations with Special Agent

3    Vasquez beyond those that the government intends to introduce.  This

4    rule applies only when the government has played a portion of a

5    recording and "misunderstanding or distortion can be averted only

6    through presentation of another portion" of the recording.  Beech

7    Aircraft Corp. v. Rainey, 488 U.S. 153, 172 (1988).  It is not a

8    means by which a defendant may skirt the hearsay rules to introduce

9    self-serving statements or otherwise cast himself in a more positive

10   light.  See United States v. Vallejos, 742 F.3d 902, 905 (9th Cir.

11   2014).  As the Ninth Circuit has recognized, "it is often perfectly

12   proper to admit segments . . . without including everything, and

13   adverse parties are not entitled to offer additional segments just

14   because they are there and the proponent has not offered them."

15   Collicott, 92 F.3d at 983.  Indeed, courts regularly permit the

16   government to introduce only portions of recorded statements while

17   excluding other portions as hearsay.  See, e.g., United States v.

18   Meraz, 663 F. App'x 580, 581 (9th Cir. 2016) (affirming district

19   court ruling permitting government to introduce portions from two

20   recorded jail calls and precluding the defendant from introducing

21   additional excerpts from these calls as inadmissible hearsay).

22       Moreover, even if a portion of a recorded statement satisfied

23   Rule 106, it still must fall within a recognized exception to the

24   rule against hearsay.  See Ortega, 203 F.3d at 682 ("Even if the rule

25   of completeness did apply, exclusion of [the defendant's] exculpatory

26   statements was proper because these statements would still have

27   constituted inadmissible hearsay."); United States v. Collicott, 92

28   F.3d 973, 983 (9th Cir. 1996), as amended (Oct. 21, 1996) (holding

that the rule of completeness "does not compel admission of otherwise inadmissible hearsay evidence" (citation omitted)); Lopez-Figueroa, 316 F. App'x at 549-50 ("[A]ny exculpatory statements by [the defendant] were hearsay and were therefore not admissible, notwithstanding Rule 106.").

### 3.   Statements to Defendant

The government also intends to introduce statements by PSO C.C. during his encounter with the defendant on August 6, 2019, and statements by Special Agent Vasquez in conversation with the defendant on September 4, 2019.  The statements are not offered for their truth, but to provide context for what the defendant said or did, and thus, are not hearsay.  Fed. R. Evid. 801(c); see also United States v. Valerio, 441 F.3d 837, 844 (9th Cir. 2006) (informant's statements on a recording are admissible to give context to defendant's statements).

### B.   Defendant's False Exculpatory Statements

The government intends to introduce evidence in its case-in-chief of defendant's false exculpatory statements to Special Agent Vasquez, including that defendant denied making a threat to PSO C.C., but instead claimed that he was talking to his friend Carson.  As another example, defendant claimed that he left when the security guard told him to come back the next day.  These statements are contradicted by eyewitness identification, surveillance video, and other evidence.  A defendant's false exculpatory statements are admissible as evidence of consciousness of guilt.  United States v. Perkins, 937 F.2d 1397, 1402 (9th Cir. 1991) (approving jury instruction); DeVore v. United States, 368 F.2d 396, 397 (9th Cir. 1966).

Since defendant's false exculpatory statements are probative of his character for truthfulness, they are also proper grounds for cross-examination under 608(b).  Further, as noted above, such statements are not hearsay if (and only if) offered by the government.

## C.   Certified Business Records

The government intends to admit the appointment lists for the Huntington Park SSA Office on August 6, 2019, and August 27, 2019 (Government Ex. Nos. 4 and 15) as certified business records pursuant to Rule 902(11).  Social Security Manager M. Evans prepared the appointment lists and can testify to the business record certification requirements.  The government provided a certification that complies with the requirements of Rule 902(11) and Rule 902(11) notice to defendant on December 12, 2021.

## D.   Identification of Defendant

The government intends to introduce evidence of prior, outside the courtroom identifications of defendant, as well as in-court identifications of defendant by one or more witnesses who saw and interacted with him in connection with the charged conduct.  The prosecution is entitled to produce any evidence tending to establish a defendant's identity.  Thomas v. United States, 343 F.2d 49, 53 (9th Cir. 1965); Stovall v. Denno, 355 F.2d 731, 736-37 (2d Cir. 1966).  A prior identification outside the courtroom is admissible not only to corroborate an identification made at trial, but also as independent evidence of identity.  Under Federal Rule of Evidence 801(d)(1)(C), the testimony of a declarant testifying at trial and subject to cross-examination as to a prior identification of a person after perceiving him or her is not hearsay, even if the prior

1    identification is equivocal.  United States v. Shyrock, 342 F.3d 948,

2    982 (9th Cir. 1977); United States v. Cueto, 611 F.2d 1056, 1063 (5th

3    Cir. 1980); Fed. R. Evid. 801(d)(1)(C).  The fact that an

4    identification in court is less than positive does not render it

5    inadmissible.  United States v. Malatesta, 583 F.2d 748 (5th Cir.

6    1978).  To ensure the witnesses have an adequate opportunity to

7    render an in-court identification, before eliciting any in-court

8    identification, the government intends to request that the Court

9    direct all individuals in the courtroom to briefly lower their masks.

### E.  Photographic Evidence

The government intends to introduce photographs of the exterior of the Huntington Park SSA Office into evidence.  Photographs are generally admissible as evidence.  See United States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs of crime scene admissible).  Photographs should be admitted so long as they fairly and accurately represent the event or object in question.  The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence."  United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

### F.  Maps and Diagrams

The government intends to admit through PSO C.C. a screenshot of Google Maps Satellite View identifying the relative location of the Huntington Park SSA Office and defendant's parked vehicle.  This map image will be used to help explain events on the afternoon defendant made the threat.  Diagrams are admissible under Federal Rule of Evidence 611(a), which permits a Court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and

1   presentation effective for ascertainment of the truth, (2) avoid
2   needless consumption of time, and (3) protect witnesses from
3   harassment or undue embarrassment." Fed. R. Evid. 611(a). The Ninth
4   Circuit has held that diagrams used to explain location and
5   positioning are properly admitted into evidence. United States v.
6   Pena-Gutierrez, 222 F.3d 1080, 1090-91 (9th Cir. 2000) (holding, in
7   an alien smuggling case, that court correctly admitted diagram
8   showing where alien was found in car).

9        **G.   Video and Audio Recordings and Transcript**

10        The government will introduce clips from surveillance video
11   showing the exterior and lobby of the Huntington Park SSA Office and
12   a nearby street on the date in question and may introduce clips from
13   audio recording of defendant's interview with Special Agent Vasquez
14   on September 4, 2019. The surveillance video does not have sound.

15        A recording is admissible upon a showing that it is "accurate,
16   authentic, and generally trustworthy." United States v. King, 587
17   F.2d 956, 961 (9th Cir. 1978). For example, testimony that a
18   recording depicts evidence that the witness observed is sufficient to
19   authenticate the recording. Fed. R. Evid. 901(b); United States v.
20   Smith, 591 F.3d 974, 979-80 (8th Cir. 2010). The government will
21   rely on the testimony of PSO C.C. to authenticate the surveillance
22   video and the testimony of Special Agent Vasquez to authenticate the
23   audio recordings. As long as the government makes a prima facie
24   showing of authenticity, the "probative force of the evidence offered
25   is, ultimately, an issue for the jury." United States v. Blackwood,
26   878 F.2d 1200, 1202 (9th Cir. 1989).

27        The government has prepared written transcripts of the audio
28   recordings as an aid to the jury in listening to recordings. See

1  <u>United States v. Turner</u>, 528 F.2d 143, 167 (9th Cir. 1975)

2  (permitting the transcripts of sound recordings to be used

3  contemporaneously with the introduction of the recordings into

4  evidence).  The government has provided copies of the government's

5  transcripts to the defense.  The transcripts will be displayed on a

6  screen simultaneous to the playing of the recordings, but will not be

7  admitted into evidence.

8       **H.   Defendant Should Be Precluded from Affirmatively Entering
           Any Evidence Not Produced in Discovery**

9

10      Rule 16 of the Federal Rules of Criminal Procedure creates

11  certain reciprocal discovery obligations on the part of defendants to

12  produce three categories of materials that they intend to introduce

13  as evidence at trial: (1) documents and tangible objects; (2) reports

14  of any examinations or tests; and (3) expert witness disclosure.

15  Rule 16 imposes on defendants a continuing duty to disclose these

16  categories of materials.  Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C),

17  and (c).  In those circumstances where a party fails to produce

18  discovery as required by Rule 16, the rule empowers the district

19  court to "prohibit the party from introducing evidence not disclosed,

20  or it may enter such other order as it deems just under the

21  circumstances."  Fed. R. Crim. P. 16(d)(2)(C) and (D).

22      As of the filing of this brief, the government has not received

23  any reciprocal discovery from defendant, save for a letter relating

24  to defendant's most recent <u>ex parte</u> application for reconsideration

25  of detention.  To the extent defendant may attempt to introduce or

26  use any evidence at trial that he has not produced to the government,

27  such documents should be excluded pursuant to the Court's order.  <u>See</u>

28  <u>Taylor v. Illinois</u>, 484 U.S. 400, 415 (1988) (defendant's failure to

comply with, or object to, government's discovery request before trial justified exclusion of unproduced evidence).

### I.   Scope of Cross-Examination of Defendant

The government is unaware whether defendant intends to testify at trial.  If defendant testifies at trial, he waives his right against self-incrimination, and the government will cross-examine him on all matters reasonably related to the subject matter of his testimony.  See, e.g., United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver.  Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.") (internal quotations and citation omitted).  The scope of cross-examination is within the discretion of the trial court.  Fed. R. Evid. 611(b).  Defendant has no right to avoid cross-examination on matters that call into question his claim of innocence.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).

### J.   Character Evidence

The Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to confuse the issues and prejudice the jury.  See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  Id.

In addition, the form of the proffered evidence must be proper.  Federal Rule of Evidence 405(a) sets forth the sole methods for which character evidence may be introduced.  It specifically states that,

16

1    where evidence of a character trait is admissible, proof may be made

2    in two ways: (1) by testimony as to reputation and (2) by testimony

3    as to opinion.  Thus, a defendant may not introduce specific

4    instances of his or her good conduct through the testimony of others.

5    See Michelson, 335 U.S. at 477.  On cross-examination of a

6    defendant's character witness, however, the government may inquire

7    into specific instances of a defendant's past conduct relevant to the

8    character trait at issue.  See Fed. R. Evid. 405(a).  In particular,

9    a defendant's character witnesses may be cross-examined about their

10   knowledge of the defendant's past crimes, wrongful acts, and arrests.

11   See Michelson, 335 U.S. at 481.  The only prerequisite is that there

12   must be a good faith basis that the incidents inquired about are

13   relevant to the character trait at issue.  See United States v.

14   McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

15        **K.   Affirmative Defenses**

16        Defendant has not given notice of any intent to rely on any

17   defense of entrapment, mental incapacity, alibi, or any other

18   affirmative defense.  See Fed. R. Crim. P. 12.1, 12.2.  The

19   government expressly requested notice of these defenses.

20   Furthermore, defense counsel has specifically informed the government

21   that, while defendant could not completely eliminate mention of his

22   mental health, he will not seek to introduce medical records or

23   elicit testimony regarding defendant's medical records.  Therefore,

24   to the extent defendant attempts to rely on any affirmative defense

25   for which he has failed to provide the required notice, or to

26   introduce medical records that he has failed to produce in discovery

27   and affirmatively represented he does not intend to admit, the Court

28   should preclude him from doing so.

                                    17

**L.   Identification of Defense Witnesses**

Defendant also has not given the government any information regarding witnesses that defendant intends to call, nor any notes or reports of prior statements by possible defense witnesses (including any reports or notes from defense interviews with such witnesses). The Court has indicated its intent to complete this trial in one day. The government must be permitted to review and evaluate <u>Jencks</u> materials for defense witnesses, and to obtain criminal history information and other readily obtainable impeachment material in order to properly cross examine them.  To eliminate the need for the government to request a recess after the direct testimony of each defense witnesses to review <u>Jencks</u> materials and other relevant materials, the government requests that the Court require defendant to provide the full name and birthdate of any witnesses (for purposes of conducting a criminal history inquiry), as well as any notes and reports of prior statements by those witnesses, not later than the start of trial at 8:30 a.m. on December 22, 2021.

**M.   Jury Nullification**

The Court should exclude any evidence or argument relating to any possible jury nullification defense.  In particular, defendant should not be permitted to introduce evidence or present argument concerning the length of sentence defendant may be facing; defendant's recent health issues, which occurred well after the charged conduct; defendant's pretrial detention or health issues while in detention; defendant's housing situation; or the Christmas or holiday season.  None of these issues is relevant to any material issue, and any minimal probative value is substantially outweighed by the risk of unfair prejudice and confusion of the issues.  <u>See</u> Fed.

18

R. Evid. 401, 403.

It is well established that a defendant does not have a right to a jury nullification instruction.  <u>United States v. Powell</u>, 955 F.2d 1206, 1213 (9th Cir. 1992).  Having no right to seek jury nullification, a defendant has no right to present evidence relevant only to such a defense.  <u>Zal v. Steppe</u>, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged.  Verdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant.").  Further, unless specifically authorized by statute, juries must reach their verdicts "without regard to what sentence might be imposed."  <u>Roaers v. United States</u>, 422 U.S. 35, 40 (1975).  As a result, "it is improper to inform the jury of the defendant's possible punishment."  <u>United States v. Jones</u>, 933 F.2d 807, 811 (10th Cir. 1991).  And, in any event, under Federal Rules of Evidence 401 and 403, such arguments or evidence are not relevant to any valid defense to the offense charged and will unnecessarily confuse the issues and mislead the jury.

## VI.   CONCLUSION

The government respectfully requests permission to file additional trial memoranda if necessary.